Samuel **SHAPIRO** and Bella Shapiro,
Appellants,

v.

**SECRETARY OF STATE** et al.

No. 73–2260.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 1, 1974.

Decided May 15, 1974.

Rehearing Denied July 17, 1974.

Nathan Lewin, Washington, D. C., with whom Herbert J. Miller, Jr. and Martin D. Minsker, Washington, D. C., were on the brief, for appellants.

Robert S. Watkins, Atty., Dept. of Justice, with whom Scott P. Crampton, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty. and Robert S. Rankin, Asst. U. S. Atty. were on the brief, for appellees. Arnold T. Aikens, Asst. U. S. Atty. also entered an appearance for appellees.

Before FAHY, Senior Circuit Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

### PER CURIAM:

Appellant Samuel Shapiro, a citizen of Israel, sought to enjoin his extradition by the United States, or, in the alternative, to enjoin a jeopardy assessment made against him by the Commissioner of Internal Revenue. Holding that it lacked jurisdiction, the District Court denied a motion for preliminary injunction and dismissed the complaint. Because we believe that the District Judge acted prematurely in dismissing the complaint against the Commissioner insofar as appellant sought to enjoin the jeopardy assessment, we remand the case for further proceedings in that regard.

### I. BACKGROUND

Sometime after coming to this country during 1970, appellant was indicted in Israel for securities fraud. The Israeli government sought his extradition, and appellant litigated the extradition request in the Southern District of New York. The District Court there found him extraditable[1] and the Second Circuit affirmed.[2] Thereafter, appellant petitioned the Supreme Court for a writ of certiorari and also began negotiations with the Israeli government, in which the Department of State acted as intermediary. Appellant offered to forego further litigation, to withdraw his peti-

---

1. In re Shapiro, 352 F.Supp. 641 (S.D.N.Y. 1973) (District Judge sitting as extradition magistrate). Thereafter, appellant sought a writ of habeas corpus and another District Judge reviewed the findings of the magis- trate. Shapiro v. Ferrandina, 355 F.Supp. 563 (S.D.N.Y.1973).

2. Shapiro v. Ferrandina, 478 F.2d 894 (2d Cir. 1973).

tion for certiorari, and to submit voluntarily to extradition; in return, he asked: (1) to remain in the United States until the birth of his child, expected in the fall of 1973; (2) to receive a speedy trial in Israel; and (3) to be free on bond before and during trial. After a dispute over the bail question Israel agreed to appellant's requests, and appellant withdrew his petition for certiorari.

Appellant's wife gave birth to a daughter on November 15, 1973, and appellant so notified the Department of State. The Secretary of State then signed a warrant of extradition and appellant agreed to surrender to the United States Marshal in New York on December 9, 1973, for immediate extradition. Appellant also arranged to transfer to the New York branch of the Bank Leumi of Israel certain funds then on deposit in several New York banks. These funds were to be used as bond for appellant's freedom in Israel under his arrangement with the Israeli government. On December 6, 1973, however, one business day before appellant's extradition, the Internal Revenue Service (IRS) imposed a jeopardy assessment on appellant, and served "Notices of Levy" on the New York banks in which appellant maintained accounts or safe deposit boxes. Appellant claims these levies distrained the money which he planned to use as bond in Israel.

Following the IRS's actions, appellant received from Israel a one-week postponement of his extradition. During this week, he brought suit in the District Court for preliminary and permanent injunction against either extradition or the action of the IRS. In response, the Government moved to dismiss the complaint for failure to state a cause of action, and for lack of subject matter jurisdiction. Initially the District Court issued a temporary restraining order against the extradition, but

did not restrain the levies on appellant's funds. After filing his complaint, appellant served interrogatories on the IRS, seeking information about the nature of the tax claim against him and the investigation underlying the claim. The IRS reluctantly responded to several of appellant's interrogatories,[3] but resisted others as irrelevant or premature.[4] In particular the IRS asserted that it could withhold all information about the nature of its claim against appellant for sixty days, i. e., until required to serve a notice of deficiency. The IRS further contended that the District Court lacked jurisdiction to investigate the claim underlying the jeopardy assessment, or, indeed, any aspect of the asserted tax liability. The IRS answered the interrogatories on December 19, 1973, and on December 20, 1973, the District Judge announced that he would render a decision at 3:00 p. m. the following day, December 21, 1973. On December 21, 1973, at 12:20 p. m., appellant's attorney received a supplement to the answers previously given by the IRS to the interrogatories. This supplement, containing the formal notice of deficiency that the IRS had previously withheld, revealed for the first time the basis of the assessment against appellant. The Commissioner asserted that appellant owed taxes for income derived from "activities as a dealer in narcotics. . . ."[5] Thereafter, at 3:00 p. m., the District Judge convened the previously announced hearing, stated from the bench that he lacked jurisdiction of the subject matter, and, accordingly, denied the motion for preliminary injunction and dismissed the complaint. Appellant appeals this decision.

## II. THE EXTRADITION

■■■ Although appellant sought to enjoin the IRS in the District Court, he asked, in the alternative, that the court enjoin his extradition. Because the Sec-

---

3. Shapiro had to compel response by motion to the District Court.

4. Of nine interrogatories, the IRS answered only three.

5. The allegations of narcotics dealing pertained to taxable year 1971. The notice also asserted a small deficiency based upon certain unexplained bank deposits made by appellant in 1970.

ond Circuit has determined that appellant is extraditable, and because the Secretary of State has signed a valid warrant of extradition, the District Court properly concluded that it lacked jurisdiction to enjoin appellant's extradition. Subject to judicial determination of the applicability of the existing treaty obligation of the United States to the facts of a given case, extradition is ordinarily a matter within the exclusive purview of the Executive.[6] Accordingly, we affirm the trial judge's conclusion that the extradition should not be enjoined.[7]

## III. THE JEOPARDY ASSESSMENT

As to appellant's complaint to enjoin the jeopardy assessment made by the IRS, it appears that the dismissal of the action was premature. The District Court has limited jurisdiction to entertain a suit for injunction against the Commissioner, to whom we refer interchangeably with the IRS, and it is understandable, in the circumstances in which the problem was presented for decision, that the District Judge decided that Shapiro had not met the strict tests for that jurisdiction. On reflection, however, we think that Shapiro should have been indulged a greater opportunity to do so.

### A. *Statutory and Judicial Background.*

 Ordinarily, the Commissioner cannot attempt to collect an asserted tax deficiency until he has mailed a notice of deficiency to the taxpayer and the period during which the taxpayer may file suit in the Tax Court has expired.[8] And if the taxpayer files suit, the collection is further enjoined until the final decision of the Tax Court.[9] The single exception to this procedure comes when the Commissioner "believes that the assessment or collection of a deficiency . . . will be jeopardized by delay . . . ;" in that event "he shall . . . immediately assess such deficiency . . ., and notice and demand shall be made by the [Commissioner] for the payment thereof."[10] This is the jeopardy assessment procedure that the Commissioner used against Shapiro. Once the Commissioner has made a jeopardy assessment, he must notify the taxpayer and demand payment of the asserted deficiency. If the taxpayer neglects or refuses to pay within ten days after notice and demand, the Commissioner may collect the tax by seizing property of the taxpayer.[11] Moreover, "[i]f the Secretary [of the Treasury] or his delegate makes a finding that the collection of such tax is in jeopardy, notice and demand for immediate payment of such tax may be made by the Secretary or his delegate and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10-day period provided in this section."[12]

---

6. *See* United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 57 S.Ct. 216, 81 L.Ed. 255 (1936).

7. Our order of February 14, 1974, suspending the effectiveness, as therein stated, of this court's denial of appellant's application for a stay, was not intended to affect appellant's extradition except as the Supreme Court might act with respect thereto.

8. When the Commissioner determines that a taxpayer has failed to pay the correct tax in a previous year, he may issue a notice describing the alleged deficiency. Int.Rev.Code § 6212(a).

9. Int.Rev.Code § 6213(a).

10. Int.Rev.Code § 6861(a). Once the Commissioner makes the jeopardy assessment, he has sixty days in which to mail a deficiency notice to the taxpayer. Int.Rev.Code § 6861(b).

11. Int.Rev.Code § 6331(a). By levy is meant "the power of distraint and seizure by any means." Int.Rev.Code § 6331(b).

12. Int.Rev.Code § 6331(a). It should be noted that section 6331(a) requires that the Commissioner provide a taxpayer prior notice of the demand for payment. The power to levy is inoperative until the subsequent "failure or refusal" of the taxpayer to pay the required amount. In the present case there are allegations that the Commissioner failed to provide the taxpayer the required notice prior to serving "Notices of Levy" on the taxpayer's New York banks. If so, then the Commissioner may well have violated Shapiro's right to due process. *See, e. g.,*

A taxpayer against whom a jeopardy assessment is made must generally pay the asserted deficiency prior to litigation, and cannot obtain an injunction against the Commissioner from a district court.[13] There is, however, a single limited exception to this general rule. In Enochs v. Williams Packing & Navigation Co.,[14] the Supreme Court held that if equitable jurisdiction would otherwise exist—due to extraordinary circumstances causing irreparable harm to the taxpayer, for which the taxpayer has no adequate remedy at law—and if the taxpayer can show, on the basis of the facts available at the time of trial, that the Commissioner could not ultimately establish his claim, then a district court may issue an appropriate injunction.[15] This exception is quite narrow:

> Only if it is . . . apparent [at the time of trial] that, under the most liberal view of the law and the facts, the United States cannot establish its claim, may the suit for an injunction be maintained. Otherwise the District Court is without jurisdiction, and the complaint must be dismissed.[16]

The rationale of this judicially-created exception to the anti-injunctive provision of the Internal Revenue Code is that district courts should be able to enjoin an asserted deficiency which is in fact an "exaction in the guise of a tax,"[17] if the exaction will cause the taxpayer irreparable harm.

When an asserted deficiency is an exaction rather than a tax, there can be no valid collection purpose which is stymied by the court's intervention.[18] Accordingly, the Commissioner can assert no interest that outweighs the taxpayer's interest in avoiding irreparable harm.[19]

### B. Application of the Enochs exception to the present case.

The principal focus of Shapiro's complaint is on facts that support a claim that his case contains the "special and extraordinary circumstances" that fulfill the equity half of the Enochs test for district court jurisdiction to enjoin a jeopardy assessment. As to the other half of the Enochs requirement, a showing that the IRS could not establish its claim, Shapiro's strongest argument to the District Court was that the actions of the IRS, when viewed in the whole context of pre-assessment events, constituted an illegal deprivation of his property without due process. In view of Phillips v. Commissioner,[20] the District Judge rejected the due process argument, and reluctantly granted the Government's motion to dismiss for lack of jurisdiction.

1. The District Judge correctly rejected Shapiro's due process argument with respect to the jeopardy as-

---

Mrizek v. Long, 187 F.Supp. 830, 835 (N.D. Ill.1959) :

. . . if plaintiffs are being thus deprived of their property by administrative action purporting to conform, but failing to conform, to the requirements of Section 6331, the plaintiffs have sufficiently alleged deprivation of property without due process of law in violation of the Fifth Amendment.
If proven, this alleged failure by the IRS to adhere to the statute might well be sufficient basis for an injunction against the levies, assuming the presence of the other essentials of equitable jurisdiction. Certainly, such a failure would vitiate much of the good faith presumption accorded the IRS in these matters. See text, infra, at note 30. But absent an express finding of fact by the District Court, we are reluctant to lend dis-positive weight to the untested allegations in appellant's brief.

13. Int.Rev.Code § 7421(a).

14. 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962).

15. See also Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932).

16. Enochs, supra, 370 U.S. at 7.

17. Miller, supra, 284 U.S. at 509.

18. Id. at 509–510. See also Dows v. Chicago, 78 U.S. (11 Wall.) 108, 20 L.Ed. 65 (1870).

19. Miller, supra, 284 U.S. at 510.

20. 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931).

sessment. But see footnote 12 as to the levy. In *Phillips,* the Supreme Court held that summary tax collection procedures are not violative of due process because the taxpayer has an opportunity for a subsequent hearing:

> Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate. . . . Delay in the judicial determination of property rights is not uncommon where it is essential that governmental needs be immediately satisfied.
>
> \* \* \* \* \* \*
>
> The procedure provided in [the Code] satisfies the requirements of due process because two alternative methods of eventual judicial review are available to the transferee. (Citations omitted.) [21]

Appellant's attempt to avoid *Phillips* is unavailing. Although he is to be extradited for trial in Israel, it is unclear at this time that Shapiro will be unable to utilize his right to the subsequent judicial review that Justice Brandeis found in *Phillips* a sufficient protection for a taxpayer's right to due process. Of course, if the Tax Court should deny appellant a continuance until he can return to this country, or if the Immigration and Naturalization Service should refuse to allow appellant to re-enter the United States to litigate in the Tax Court, then the question of deprivation of due process may arise. But these events may never transpire, and unless and until they do we are not called upon to rule whether the procedures followed by the IRS fall outside the ambit of the Su-

preme Court's holding in *Phillips,* as recently reaffirmed in Fuentes v. Shevin.[22]

 2. Notwithstanding the obstacle to relief posed by *Phillips,* there is another theory that might validate Shapiro's contention that the Commissioner will be unable to establish his claim for a deficiency. Case law in other circuits has established conclusively that the IRS cannot prevail when its asserted claim is "entirely excessive, arbitrary, capricious, and without factual foundation. . . ." Lucia v. United States, 474 F.2d 565, 573 (5th Cir. 1973) (*en banc*); Pizzarello v. United States, 408 F.2d 579 (2d Cir. 1969). Thus, if Shapiro can show, or if the trial court can determine from factual submissions of the Commissioner, that there is no factual foundation for the allegation that Shapiro was a narcotics dealer, or that the Government's calculation of the deficiency has no rational basis, then the District Court could find that the Government could not ultimately establish its claim.

 3. Because he filed his complaint prior to the IRS's revelation of the basis and amount of its claim against him, Shapiro could not deny in his complaint that he was a narcotics dealer nor did he allege that the IRS's claim was invalid because it was arbitrary and excessive. But in the circumstances, such allegations are fairly implicit in the complaint and, broadly construed, the complaint should have been sufficient to withstand the Government's motion to dismiss.[23] Certainly the record contained no facts that would support any conclusion inconsistent with this view of the case.[24] Accordingly, the

21. *Id.* at 596–597.

22. 407 U.S. 67, 92 n. 24, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

23. As one judge has ruled in similar circumstances,
> On a motion to dismiss, [the *Enochs* test for jurisdiction] is applied only after the factual allegations of the complaint have been construed in a manner most favorable to the pleader. Under "the most lib-

eral view of the law and facts" as deemed established by the pleadings, we are unable to say that the plaintiff has not met "the requirement of showing that the United States cannot under any circumstances prevail." (Citations omitted.)·

Monsky v. Fitzgerald, 297 F.Supp. 943, 946 (E.D.N.Y.1968).

24. Indeed, it is settled that "[f]or the purposes of a motion to dismiss, the material

District Judge might have allowed Shapiro an opportunity to discover more evidence, or he could have compelled the Commissioner to provide factual support for the asserted deficiency. Alternatively, if the District Judge found the original complaint insufficient, he could have allowed Shapiro to amend it after the Commissioner's eleventh hour promulgation of the notice of deficiency.[25] But the District Judge we think should not have dismissed the complaint on the bare record before him.

4. An effort by the District Court to discover the factual foundation for the IRS's claim against a taxpayer is consistent with *Enochs*. Indeed, both *Lucia* and *Pizzarello* underscore the Supreme Court's ruling in *Enochs*,

> that the question of whether the Government has a chance of ultimately prevailing is to be determined *on the basis of the information available to it at the time of suit*. (Emphasis added.)[26]

As to the extent of the necessary inquiry into the facts, *Lucia* and *Pizzarello* also provide some guidance to the District Judge. For instance, in both cases two central facts had already been established on the public record before the cases came to the District Court: both courts knew (1) that the taxpayer had owned an illegal gambling establishment, and (2) the method by which the IRS had calculated the asserted deficiency.[27] Even with this information available to it, the Fifth Circuit in *Lucia*, sitting *en banc*, ruled unanimously that a fuller record was necessary for a proper deter-

mination whether the asserted deficiency was arbitrary and excessive. Accordingly, the court remanded the record to the District Court for further development:

> Was the taxpayer accepting wagers during the entire period covered by the assessment? Are the Government's figures based on realistic projections or were they merely derived, Mandrake-like, from a filament of evidence and subjected to a sleight-of-hand computation? Does the 40% factor used in the computation have any factual basis, or is it merely the product of an agent's conjecture? Can the base day properly be assumed to be an average day for that week, much less for several years? Only after exploring all relevant considerations on remand will the District Court be able to determine whether the computative basis is so insufficient as to make the assessment an exaction in "the guise of a tax" rather than a legitimate tax on wagers.[28]

On the other hand, in *Pizzarello* the Second Circuit acted without a remand. Where the Commissioner had asserted a large tax deficiency for several years of gambling income, but had determined this deficiency from only three days' gambling receipts, the court ruled that the Government's claim was excessive:

> . . . [T]here is no proof in the record before us that Pizzarello operated as a gambler for five years or that, even if he did so operate, his

---

allegations of the complaint are taken as admitted." Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969), *citing* Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172, 174–175, 86 S.Ct. 347, 15 L. Ed.2d 247 (1965).

25. *See* Fed.R.Civ.P. 15; Bonanno v. Thomas, 309 F.2d 320, 322 (9th Cir. 1962).

26. 370 U.S. at 7.

27. In view of the holdings of the Second and Fifth Circuits that the IRS cannot prevail when its asserted deficiency was arbitrary

and plainly excessive, we do not think *Lucia* and *Pizzarello* can fairly be confined to situations where it happens that the court had access to the facts and theory of the Government as developed in a prior criminal trial. The theory of Judge Weinstein in *Monsky* requires the Government to come forward in order to counter the complaint with a claim of lack of jurisdiction. And we note that *Lucia* was not based solely on the facts already known, for the appellate court remanded for further discovery.

28. 474 F.2d at 575.

three-day average of April 12th–14th, 1962, represented his average daily business of the other 1,575 days. No court could properly make such inferences without some foundation of fact.

\* \* \* \* \* \*

. . . the indictment charged Pizzarello with operating a bookmaking establishment only from March 30, 1965, to April 15, 1965. Where the Government got the date that Pizzarello was accepting wagers from April 1, 1960, is unsupported either by the record or by affidavits. Moreover, while we recognize the difficulties faced by Treasury Agents, and the need to estimate in situations of this nature, wagers received on three consecutive days can hardly be said to be representative of wagers received over a five-year period, even assuming Pizzarello accepted wagers for as long as the Government contends.

\* \* \* \* \* \*

Because the District Director made a totally excessive assessment, excessive because based on entirely inadequate information, collection should be enjoined, if equity jurisdiction otherwise exists. (Footnotes omitted.) [29]

 5. By its instant ruling, this court does not require the District Court to explore the matter in precisely the same manner as the District Court was instructed to do in *Lucia,* or as the Second Circuit did in *Pizzarello.* Every case is different and should be considered on its particular facts. But at the very least the District Court must obtain some evidence by which to judge whether the asserted deficiency was a tax or was so arbitrary and excessive as to be "an exaction in the guise of a tax." While it is not probable that the Government created the deficiency out of whole cloth, it is equally true that "[the Government's] burden [to show good

faith] is not met by mere 'protestations of good faith and conclusory statements of plaintiff's tax liability. (Citation omitted.)' " [30] The District Court should therefore inquire whether there are any facts from which good faith may be inferred, and absent such facts, the judge should not dismiss the case in deference to any presumption in favor of the IRS.

## IV. DISPOSITION

We therefore vacate the judgment dismissing the complaint for lack of jurisdiction, and remand the case to allow the District Court an opportunity to develop a record that adequately supports a ruling on the Government's motion to dismiss. On remand the District Judge should examine the facts on which the Government bases its claim against Shapiro and determine its jurisdiction on the basis of these facts, in light of *Lucia* and *Pizzarello.* On remand, the judge may wish to reconsider his denial of preliminary injunction. If not, then the jeopardy assessments will stand while the record is developed.

 Because the case is somewhat sensitive in nature, it may be that the District Judge will wish to examine some of the Commissioner's information *in camera.* As we do not wish to force the Government to reveal on the public record such information as the names of informers, an *in camera* examination may be appropriate. This matter is within the discretion of the trial judge.

 In remanding, it should be clear that we are satisfied that appellant's situation meets the equitable irreparable injury component of the *Enochs* test. Appellant alleges and the Commissioner does not dispute that the jeopardy assessment and the levies have frozen the funds he intended to use as bond in Israel. It therefore appears

---

29. 408 F.2d at 583–584. The Court in *Pizzarello* also held, in the alternative, that the IRS could not establish its claim because it had acted on the basis of illegally seized evidence. *Id.* at 585.

30. *Monsky, supra,* 297 F.Supp. at 944. *See also* United States v. CiCalese, 32 Am.Fed. Tax R.2d 73–5629 (E.D.Pa.1973).

that after extradition Shapiro will be incarcerated, an incarceration that will cause irreparable injury for which he has no remedy at law. To be sure, Shapiro has a remedy at law against the levy on his funds. But while he can pursue his remedy against the levies either during or after his probable incarceration, a mere restoration of his funds will not repair the injury caused by his imprisonment. Thus, if the District Judge finds that there is no factual foundation for the Commissioner's actions, or that the amount of the asserted deficiency is totally excessive then he may enjoin the jeopardy assessment and the levy.

Affirmed as to dismissal of the Complaint insofar as it relates to execution of the extradition warrant, otherwise reversed and remanded for further proceedings consistent with this opinion.