**L. O. C. INDUSTRIES, INC.**

v.

**UNITED STATES of America.**

**No. 76–33–NA–CV.**

United States District Court,
M. D. Tennessee,
Nashville Division.

June 25, 1976.

Joel H. Dark, Dark & Bateman, Nashville, Tenn., Richard D. Hall, Jr., Wolfe, Coggin, Hoyle & Workman, Greensboro, N. C., Ocie F. Murray, Jr., Nance, Collier, Singleton, Kirkman & Herndon, Fayetteville, N. C., for plaintiff.

Charles H. Anderson, U. S. Atty., and Charles Fels, Asst. U. S. Atty., Nashville, Tenn., S. Martin Teel, Jr., Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM

FRANK GRAY, Jr., Chief Judge.

This action was brought by L.O.C. Industries, Inc. (hereinafter referred to as L.O. C.), for a preliminary and permanent injunction to restrain the United States from conducting a second examination of L.O.C.'s books and records, and to require the United States to return monies seized by levy on L.O.C.'s bank account, pursuant to a jeopardy termination of L.O.C.'s tax year. On February 4, 1976, a hearing was held in this court on L.O.C's motion for a temporary restraining order to preclude the Government from proceeding with its second examination.[1] After the court refused to grant the motion for lack of a sufficient showing of irreparable harm, L.O.C. dropped its request for injunctive relief with respect to the second examination.[2] The only remaining question in the case is whether an injunction should be issued requiring the Government to return the $146,000 it seized from L.O.C's bank account.

A hearing on the case was scheduled for February 20, 1976. At that time, counsel for both parties informed the court that a stipulation had been agreed upon which would eliminate the necessity for an evidentiary hearing, and which would allow the court to decide the case on the merits, based

1. The motion did not use these terms but was stated as a request for a temporary restraining order to stop the Government ". . . from continuing to make available to the Internal Revenue Service books and records seized from the plaintiff in a raid conducted by defendant on December 18, 1975, or copies thereof. . . ." The court interpreted this language as a motion to restrain a second examination, regardless of the source of the documents.

2. No further reference is made to the second examination in the plaintiff's briefs or in the parties' stipulation. A telephone conversation with Mr. Richard D. Hall, Jr., counsel for the plaintiff, confirmed L.O.C.'s relinquishment of this claim.

on the stipulation and briefs of the parties. Counsel further informed the court that several amendments had been added to the stipulation, and these were read into the record at the hearing.

The original stipulation and the amendments thereto, which are set out in full in the court's order of February 24, 1976,[3] recite in detail the events surrounding the jeopardy termination of L.O.C's tax year. On December 18, 1975, the F.B.I. searched L.O.C.'s premises and seized all its books and records. The Acting District Director of the Internal Revenue Service (I.R.S.), Nashville, Tennessee, learned of the search on the same afternoon. Thereafter, on December 19, 1975, several events followed, beginning with an I.R.S. Field Audit Group Manager's recommendation that L.O.C.'s tax year be terminated, which recommendation was approved by the Acting District Director at 6:00 a. m. At 6:18 a. m., a Notice of Termination of Taxable Period was mailed to L.O.C. by certified mail. This letter was not received by L.O.C. until after 9:30 a. m. At 7:12 a. m., a tax of $247,083 was assessed against L.O.C. At 8:05 a. m., a form 3552, Prompt Assessment Billing Assembly,[4] was delivered to L.O.C.'s principal place of business, which form was not received by any officer or employee of the corporation until sometime after 8:30 a. m.[5] At 8:18 a. m., a notice of levy was served on the main office of First American National Bank. This notice was followed by a second notice of levy at 8:30 a. m. on the Harding Road Branch of the First American National Bank. On January 6, 1976, First American paid approximately $146,000 to the I.R.S., pursuant to the notices of levy served on December 19, 1975. On February 12, 1976, a notice of tax deficiency was served on L.O.C. by the I.R.S.

The Government filed a motion to dismiss the action on February 24, 1976, claiming that the court lacked jurisdiction and citing four grounds in support thereof: (1) that the action is barred by the doctrine of sovereign immunity; (2) that it is in effect an action for refund under 26 U.S.C. §§ 7422(a) and 6532(a), which is not allowable because a claim for refund has not been filed which has been denied or not acted upon within six months; (3) that a refund claim is further barred because the plaintiff has failed to pay the full amount of the deficiency; and (4) that the Anti-Injunction Act in 26 U.S.C. § 7421(a) bars the plaintiff's claim for injunctive relief.[6]

In examining first the sovereign immunity argument, the court recognizes the traditional immunity against suit which attaches to the United States as sovereign. Along with this doctrine, however, goes the United States' capacity to consent to a law-

---

3. The order of February 24, 1976, was necessitated by a disagreement between the parties as to the opening paragraph of the stipulation. The Government contended that the following phrase should begin the paragraph: "In the event that the Court denies the Government's motion to dismiss in this proceeding, it is hereby stipulated. . . ." This phrase would have precluded the court's use of the stipulation when considering the motion to dismiss. Although in most cases factual matter is not referred to when motions to dismiss are considered, in a tax case such as this, which involves a suit to enjoin the Internal Revenue Service, factual matter such as that included in the stipulation is jurisdictional in nature and must be considered. Moreover, the phrase as set out above was not included in the original stipulation, nor was it read into the record along with the amendments on February 20, 1976.

4. This paper included the date of assessment as December 19, 1975, the duration of the tax period as 6–1–75 to 12–19–75, and the figure $247,083 in the column for balance due.

5. It is stipulated that no officer or employee arrived at the L.O.C. headquarters until sometime after 8:30 a. m. on December 19, 1975.

6. In its motion to dismiss, the Government sets out as a separate ground the lack of irreparable injury and the availability of an alternative remedy at law. However, in its brief in support of the motion, the Government does not use these as separate grounds but instead incorporates them into its fourth ground, that dealing with the Anti-Injunction Act. More specifically, the Government includes it as precluding the application of the judicial exception to the Anti-Injunction statute espoused by the Supreme Court in *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962).

suit, *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941), and Congress may provide such consent by statute, *United States v. Shaw*, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940). The Government, in setting forth its grounds for dismissal, has recognized at least two statutes which provide the necessary consent in tax cases. A method is provided in 26 U.S.C. § 7422(a) by which a taxpayer can sue the Government for a refund, and the Anti-Injunction Act, 26 U.S.C. § 7421(a), recognizes, within the statute itself, exceptions where injunctions can be obtained, 26 U.S.C. §§ 6212(a), (c), 6213(a), 7426(a), (b)(1). In addition, the Supreme Court has said in *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), that the purpose of the Anti-Injunction statute, 26 U.S.C. § 7421(a), is not applicable if certain extraordinary circumstances [7] are shown by the taxpayer, and an injunction may issue. Thus, whether sovereign immunity bars this action is the ultimate question, and may only be answered after the Government's remaining grounds are considered.

The second and third grounds, asserted by the Government in its motion to dismiss, address the same statutory scheme permitting suit against the Government for refund of a tax, 26 U.S.C. §§ 7422(a), 6532(a)(1),[8] so the court will consider them together. In essence, the Government contends that the plaintiff's request for an injunction, requiring the Government to return monies seized by levy, is in actuality a suit "for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected," 26 U.S.C. § 7422(a). Therefore, the jurisdictional prerequisites for suit under § 7422(a) must be met, two of which are applicable to this action: (1) prior to initiating suit for a refund, the taxpayer must file a claim for a refund or credit, which claim must have been denied by the Secretary or not acted upon for six months, 26 U.S.C. § 7422(a), 6532(a)(1); and (2) prior to initiating suit the taxpayer must have paid the tax deficiency in full. *Flora v. United States*, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), *rehearing granted* 360 U.S. 922, 79 S.Ct. 1430, 3 L.Ed.2d 1538 (1959), *affirmed on rehearing*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). Since L.O.C. makes no allegation that these prerequisites have been met, nor is there any reference to them in the stipulation, the court finds that this action is not sanctioned by that section.

The Government's contentions that this suit is actually a suit for a refund under § 7422(a) and that the action is thus barred because the jurisdictional prerequisites for an action under that statute have not been met, necessarily call for a conclusion that § 7422(a) is the only method by which the I.R.S. can be forced to return monies previously collected. This conclusion may be supported by the statute itself which says in part: "No suit or proceeding shall be maintained in any court for the

7. The taxpayer must show ". . . that under no circumstances could the Government ultimately prevail . . . [and that] equity jurisdiction otherwise exists." *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962).

See note 6 *supra*.

8. Section 7422(a) reads:

"(a) No suit prior to filing claim for refund.—No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof."

Section 6532(a)(1) reads as follows:

"(1) General rule.—No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary or his delegate renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary or his delegate to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates."

recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . ."[9] However, the Government fails to cite any authority for reading the statute in this manner. Moreover, to say that a suit for an injunction in this case is barred because the action is in actuality a suit for a refund under § 7422(a) is to ignore completely the Supreme Court's recent decision in *Laing v. United States*, 423 U.S. 161, 96 S.Ct. 473, 46 L.Ed.2d 416 (1976). That case[10] involved the seizure by the I.R.S. of over $300,000 from an automobile in which Laing and two companions were riding when they were stopped by customs officials. The amount seized was applied to deficiencies assessed against each of the individuals pursuant to a jeopardy termination of their tax year. Mr. Laing filed an action against the United States, ". . . seeking an injunction against the continued possession by the Internal Revenue Service . . . of money allegedly belonging to him . . . ." *Laing v. United States*, 364 F.Supp. 469 (D.Vermont 1973). Although this action was dismissed by the district court on grounds not related to the discussion at this point, it was subsequently allowed by the Supreme Court. In that opinion the Court noted the following: "Petitioner Laing also has filed suit for refund in the United States District Court for the District of

Vermont. Trial is being delayed, pursuant to stipulation of the parties, pending our decision in the present case." 423 U.S. at 166, 96 S.Ct. at 477, 46 L.Ed.2d at 426 n. 6. Clearly, the Supreme Court has not read § 7422(a) as the only method by which a taxpayer, such as L.O.C., can sue for a return of seized funds. Another permissible method, assuming the prerequisites for an injunction against the United States are met, is an action for an "injunction against the continued possession of the monies seized." *Laing v. United States*, 364 F.Supp. 469 (D.Vermont 1973). *See also: Bailey v. Kelley*, 372 F.Supp. 449 (N.D.Ohio 1974).

If L.O.C.'s complaint is construed as was the complaint in *Laing, supra*, the action is one for an injunction, and the Government's fourth ground must be examined. The Government contends that the action is barred by the Anti-Injunction Act, 26 U.S.C. § 7421(a)[11] because the exceptions recited therein are not applicable here, and further, because the requirements for *Enochs v. Williams Packing & Navigation Co., supra,*[12] are not present here.

Two of the statutory exceptions to the Anti-Injunction Act can be dismissed as clearly inapplicable.[13] The third statutory exception is contained in 26 U.S.C. § 6213(a).[14] That section says generally

9. *See* note 8 *supra*.

10. Two cases were consolidated by the Supreme Court for consideration in *Laing*. The first is described in the text. The second, *United States v. Hall*, 493 F.2d 1211 (6th Cir. 1974), also involved a jeopardy termination, but the I.R.S. seized Hall's automobile and her bank account. She brought the action for an injunction to restrain the I.R.S. from selling her automobile and from seizing any more of her property.

11. Section 7421(a) reads:
     "(a) Tax.—Except as provided in sections 6212(a) and (c), 6213(a), and 7426(a) and (b)(1), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."
     Although an argument might be made that the statute on its face appears to address a case where the taxpayer is seeking an injunc-

tion to restrain the I.R.S. from its continued possession of money seized because the tax has already been assessed and collected, the Court, in *Laing, supra*, apparently accepted the statute as applicable to an injunction against the continued possession of monies seized.

12. *See* note 7 and accompanying text *supra*.

13. This action does not involve a levy on property in which a third party has an interest. Since 26 U.S.C. §§ 7426(a), (b)(1) permit injunctions under certain circumstances in a third party situation, those sections are clearly inapplicable here. Similarly, §§ 6212(a), (b)(1), which are addressed to the Commissioner's power to determine an additional deficiency after a notice of deficiency is mailed, are also not involved in this case.

14. Section 6213(a) reads as follows:
     "(a) Time for filing petition and restriction on assessment.—Within 90 days, or 150 days

that, except as provided in § 6861, the I.R.S. may not proceed to assess a deficiency or to levy or to try to collect a tax until ninety days after it has mailed a deficiency notice to a taxpayer, and, if the taxpayer files suit within that time, the I.R.S. must await the Tax Court's decision before proceeding with a levy or assessment. If the I.R.S. acts before the taxpayer has had an opportunity to exhaust his administrative remedies in the Tax Court, an injunction may issue.

Although 26 U.S.C. § 6213(a) mentions specifically 26 U.S.C. § 6861,[15] the jeopardy assessment provision, as providing an exception to the normal situation whereby assessment and collection of a deficiency must not proceed before the taxpayer has an opportunity to litigate his tax liability in the Tax Court, 26 U.S.C. §§ 6212, 6213, the

statute makes no reference to 26 U.S.C. § 6851,[16] the jeopardy termination provision under which the I.R.S. was purportedly proceeding when it terminated L.O.C.'s tax year on December 19, 1976. However, § 6861 and § 6851 were recently merged into one continuous jeopardy process by the Supreme Court in *Laing v. United States, supra.* That is, when a jeopardy termination is made under § 6851(a), as in the instant case, *Laing* provides generally that the I.R.S. must assess and follow the procedures outlined by § 6861.

In examining the procedures required by § 6861 and thus also by § 6851, the Court in *Laing* held specifically that, when the I.R.S. is proceeding under § 6851, it must issue a notice of deficiency within 60 days of the assessment, as required by § 6861(b).[17]

if the notice is addressed to a person outside the States of the Union and the District of Columbia, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided in section 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A or B and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court."

**15.** The jeopardy assessment provision, 26 U.S.C. § 6861, reads in part as follows:

"(a) Authority for making.—If the Secretary or his delegate believes that the assessment or collection of a deficiency, as defined in section 6211, will be jeopardized by delay, he shall, notwithstanding the provisions of section 6213(a), immediately assess such deficiency (together with all interest, additional amounts, and additions to the tax provided for by law), and notice and demand shall be made by the Secretary or his delegate for the payment thereof.

"(b) Deficiency letters.—If the jeopardy assessment is made before any notice in respect of the tax to which the jeopardy assess-

ment relates has been mailed under section 6212(a), then the Secretary or his delegate shall mail a notice under such subsection within 60 days after the making of the assessment."

**16.** The jeopardy termination provision, 26 U.S.C. § 6851(a) reads as follows:

"(a) Income tax in jeopardy.—

"(1) In general.—If the Secretary or his delegate finds that a taxpayer designs quickly to depart from the United States or to remove his property therefrom, or to conceal himself or his property therein, or to do any other act tending to prejudice or to render wholly or partly ineffectual proceedings to collect the income tax for the current or the preceding taxable year unless such proceedings be brought without delay, the Secretary or his delegate shall declare the taxable period for such taxpayer immediately terminated, and shall cause notice of such finding and declaration to be given the taxpayer, together with a demand for immediate payment of the tax for the taxable period so declared terminated and of the tax for the preceding taxable year or so much of such tax as is unpaid, whether or not the time otherwise allowed by law for filing return and paying the tax has expired; and such taxes shall thereupon become immediately due and payable. In any proceeding in court brought to enforce payment of taxes made due and payable by virtue of the provisions of this section, the finding of the Secretary or his delegate, made as herein provided, whether made after notice to the taxpayer or not, shall be for all purposes presumptive evidence of jeopardy."

**17.** *See* note 15 *supra.*

Since no notice of deficiency was mailed to Laing within the required time, the general rule that levies pursuant to § 6861 assessments, and thus to § 6851 terminations, are not enjoinable under § 6213(a), was inapplicable because the procedures of § 6861 had not been followed. As the Supreme Court said:

> "When, however, IRS fails to follow the procedures of § 6861 et seq., as in these cases, it is not assessing 'as . . . provided in' § 6861, and the § 6861 exception to § 6213(a) is inapplicable. In such cases, § 6213(a)'s exception to the Anti-Injunction Act becomes operative, and a suit to enjoin the collection may be brought." 423 U.S. at 184, 96 S.Ct. at 486, 46 L.Ed.2d at 434, n. 27.

■ The *Laing* holding that a deficiency notice must be mailed within 60 days of a § 6861 assessment when a tax year is terminated under § 6851 in order to preclude a suit for injunction predicated on § 6213(a) does not apply in the instant case. In this case, a timely notice of deficiency was mailed by the I.R.S. on February 17, 1976, less than 60 days after the original assessment was made on December 19, 1975.

■ Although the specific holding of *Laing* dealing with the notice of deficiency does not apply here, there is a second notice requirement in § 6861. Along with a notice of deficiency, § 6861 requires the I.R.S. to make notice and demand for payment of the tax.[18] 26 U.S.C. § 6861(a); *United States v. Ball*, 326 F.2d 898, 901 (4th Cir. 1964). Since the Supreme Court determined in *Laing* that § 6861 is the assessment mechanism for a § 6851 termination,

*Laing v. United States, supra,* at 434, it would seem that the notice and demand requirements would also be applicable to § 6851 terminations. Moreover, if this notice procedure were not followed, § 6213(a) should also permit an injunction because the jeopardy assessment would not be made "'as . . . provided in' § 6861." *Id.* at 434, n. 27.

The Government contends that it complied with the notice and demand requirement of § 6861. In summary, the Government says that the Prompt Assessment Billing Assembly,[19] which it left at L.O.C.'s office on December 19, 1975, at 8:05 a.m., met the requirement, and that, even if this notice were not sufficient, the notice of termination delivered to the taxpayer at 9:30 a.m. on the same date fulfilled the notice and demand requirement.

Since § 6861 places no time limits on the notice and demand requirement as it does on the deficiency notice, and since the notice of termination under § 6851 contained a demand for payment of the tax due as well as other information,[20] a strict reading of § 6213(a) and *Laing* would lead to the conclusion that the jeopardy termination and assessment were made in accordance with § 6861. Thus, under § 7421(a) and § 6213(a), no injunction could issue against the levies.

The above interpretation flows readily from the applicable statutes, but the Supreme Court, in another recent decision, has promulgated another interpretation which in effect incorporates the statutory requirements for levy, 26 U.S.C. § 6331,[21] into

---

18. The jeopardy termination statute, 26 U.S.C. § 6851(a), also requires that notice and demand be given to the taxpayer. *See* note 16 *supra*.

19. *See* note 4 and accompanying text *supra*.

20. The notice of termination contained the following information: the notice that the taxpayer's year was terminated, the dates of the period, the reasons for the termination, the amount of the tax assessed, the demand for payment, a warning that unless the tax was paid that collection actions would proceed, and information concerning the filing of a short year tax return.

21. Section 6331 reads:
"(a) Authority of Secretary or delegate.— If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. Levy may be made upon the accrued salary or wages of

§ 6213(a). In *Commissioner v. Shapiro*, 424 U.S. 614, 96 S.Ct. 1062, at 1066, 47 L.Ed.2d 298 (1976), the Court wrote:

"Normally, the Internal Revenue Service may not 'assess' a tax or collect it, by levying on or otherwise seizing a taxpayer's assets, until the taxpayer has had an opportunity to exhaust his administrative remedies, which include an opportunity to litigate his tax liability fully in the Tax Court, 26 U.S.C. §§ 6212, 6213; and if the Internal Revenue Service does not attempt to collect the tax by levy or otherwise, before such exhaustion of remedies in violation of 26 U.S.C. § 6213, the collection is not protected by the Anti-Injunction Act and may be restrained by a United States District Court at the instance of the taxpayer. 26 U.S.C. §§ 6213, 7421. The rule is otherwise when the Commissioner proceeds under § 6861 and finds that collection of a tax due and owing from a taxpayer will be 'jeopardized by delay' in collection. In such a case, the Commissioner may immediately assess the tax and, upon 'notice and demand' 'for payment thereof' followed by the taxpayer's 'failure or refusal to pay such tax,' may immediately levy on the taxpayer's assets. 26 U.S.C. §§ 6861, 6331, 6213. When the Commissioner follows this procedure, the Anti-Injunction Act applies in full force and 'no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person.' 26 U.S.C. § 7421(a)."

Thus, in spite of this court's reluctance to so hold, the Supreme Court has declared in *dicta* [22] that the requirements of § 6331 must be met before the bar of § 7421(a) can be asserted. [23] That is, "notice and demand"

any officer, employee, or elected official, of the United States, the District of Columbia, or any agency or instrumentality of the United States or the District of Columbia, by serving a notice of levy on the employer (as defined in section 3401(d)) of such officer, employee, or elected official. If the Secretary or his delegate makes a finding that the collection of such tax is in jeopardy, notice and demand for immediate payment of such tax may be made by the Secretary or his delegate and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10-day period provided in this section.

"(b) Seizure and sale of property.—The term 'levy' as used in this title includes the power of distraint and seizure by any means. A levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary or his delegate may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

"(c) Successive seizures.—Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary or his delegate may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

"(d) Salary and wages.—

"(1) In general.—Levy may be made under subsection (a) upon the salary or wages of an individual with respect to any unpaid tax only after the Secretary or his delegate has notified such individual in writing of his intention to make such levy. Such notice shall be given in person, left at the dwelling or usual place of business of such individual, or shall be sent by mail to such individual's last known address, no less than 10 days before the day of levy. No additional notice shall be required in the case of successive levies with respect to such tax.

"(2) Jeopardy.—Paragraph (1) shall not apply to a levy if the Secretary or his delegate has made a finding under the last sentence of subsection (a) that the collection of tax is in jeopardy."

**22.** The Court in *Shapiro* did not have to reach the question of compliance with this statutory scheme, because the I.R.S., fearful that its levies would be no good, served new notices of levy which were in compliance with the statutes. See note 23 *infra*.

**23.** This reading of *Shapiro* is further supported by the Court's footnote 7, which reads in part:

"Shapiro had alleged, for the first time on appeal, that no notice or demand had been made of him to pay the taxes at the time the levies were served. Such notice and demand is required by 26 U.S.C. § 6861, compliance with which is necessary under § 6213(a), if the Anti-Injunction Act is to apply. The Commissioner claimed that he had mailed a deficiency notice to Shapiro on December 6, 1973.

"It is clear that a demand has now been made for payment of the tax assessed and that the levies are now in compliance with § 6213. A notice of deficiency was served on

must be made upon the taxpayer and upon his "failure or refusal to pay," collection by levy may be effected, 26 U.S.C. § 6331(a).

In the instant case, the parties have agreed that a levy was proceeding prior to the receipt of any notice by a L.O.C. officer or employer. The Government argues that receipt is not required prior to levy and that delivery of the Prompt Assessment Billing Assembly to L.O.C. offices was therefore enough to satisfy the notice and demand requirement of § 6331.

▮ In examining the Government's contention that receipt of the notice and demand was not required prior to levy, the court is struck by the pertinent language of § 6331(a), stating that, in a jeopardy situation, "notice and demand for immediate payment of such tax may be made by the Secretary . . . and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful . . . ." The conclusion is inescapable from reading this language that a taxpayer in a jeopardy situation is to be given some opportunity, however short, to fail or refuse to pay the tax. This reading of the statute draws some support from the court of appeals' decision in *Commissioner v. Shapiro*, which hints that any other reading of the statute might constitute a denial of due process:

"It should be noted that section 6331(a) requires that the Commissioner provide a taxpayer prior notice of the demand for payment. The power to levy is inoperative until the subsequent 'failure or refusal' of the taxpayer to pay the required amount. In the present case there are allegations that the Commissioner failed to provide the taxpayer the required notice prior to serving 'Notices of Levy' on the taxpayer's New York banks. If so, then the Commissioner may well have

Shapiro's attorney in the District Court on December 21, 1973. The Internal Revenue Service, conceding that it could not be sure whether the original notice of deficiency was mailed before or after the notices of levy were served, served new notices of levy on October 11 and 15, 1974. This moots both the question whether the IRS mailed a notice of deficiency to Shapiro on December 6,

violated Shapiro's right to due process. *See, e. g., Mrizek v. Long,* 187 F.Supp. 830, 835 (N.D.Ill.1959):

. . . 'if plaintiffs are being thus deprived of their property by administrative action purporting to conform, but failing to conform, to the requirements of Section 6331, the plaintiffs have sufficiently alleged deprivation of property without due process of law in violation of the Fifth Amendment.' "

162 U.S.App.D.C. 391, 499 F.2d 527, 531–32, n. 12 (1975). The case cited by the court of appeals, *Mrizek v. Long,* 187 F.Supp. 830 (N.D.Ill.1959), is a case in which notice was not sent until some five days after seizure. However, language contained in that opinion further supports the conclusion that some opportunity for the taxpayer to fail or refuse to pay is inherent in § 6331. As the court says in *Mrizek*: " . . . R. J. Mrizek Co., Inc. has never neglected, failed or refused to pay any tax liability . . . because no neglect, failure or refusal to pay within the meaning of Section 6331 can occur prior to notice and demand." 187 F.Supp. at 835.

▮ In the instant case, L.O.C. had no opportunity whatsoever to fail or refuse to pay. The Prompt Assessment Billing Assembly left at the L.O.C. headquarters bore no possibility of giving L.O.C. an opportunity to fail or refuse, since before any officer or employee arrived the I.R.S. was levying on the bank account. The notice of termination received at 9:30 a.m. after the last levy at 8:30 a.m. similarly provided L.O.C. with no opportunity to fail or refuse to pay. The procedure employed by the I.R.S. in this instance was only a mechanical attempt to comply with the notice and demand requirement, and it failed to comply with either the letter or spirit of § 6331.[24]

1973, and whether the notice preceded the levies. There can be no question at this point, therefore, that in these respects the levies are in technical compliance with the provisions of § 6861."

24. The cases cited by the Government in support of its contention that the requirements of § 6331 have been met are inapplicable to the case at hand. These cases, *e. g., Williams v.*

Since the procedural framework of 26 U.S.C. §§ 6331, 6861, and 6213(a) was not followed in this case, the Anti-Injunction Act does not apply and an injunction may issue, 26 U.S.C. §§ 7421(a), 6213(a). Therefore, the Government's sovereign immunity argument, discussed earlier, has no merit, and the Government's motion to dismiss is DENIED.

The discussion above, while directed initially at the motion to dismiss, is equally applicable to the decision on the merits. When the I.R.S. does not proceed according to § 6861 and § 6331(a) in terminating a taxpayer's tax year pursuant to § 6851, an injunction may issue against a levy begun before the expiration of the 90-day moratorium on levies which begins after the issuance of the deficiency notice, 26 U.S.C. § 6213(a). Such was the case here since the notice of deficiency was not issued until February 12, 1976, long after the notices of levy were served on L.O.C.'s bank on December 19, 1975.

The Government argues throughout its briefs that L.O.C. has failed to show irreparable harm and that there is in fact an adequate remedy at law available in the form of a Tax Court proceeding. Although irreparable harm and adequate remedies are topics generally considered in a suit for injunctive relief, the statute permitting in-junctions in this instance omits these requirements, 26 U.S.C. § 6213(a). In *Laing v. United States, supra,* when injunctive relief was granted under this section, no mention was made of irreparable harm. Similarly, at least one court has stated that the section bears no such requirement: " . . . [S]ince the statute (26 U.S.C.A. § 6213) does not require irreparable injury as a prerequisite to injunctive relief, the Court does not feel that it is necessary to determine whether irreparable injury has been or will be suffered by plaintiffs." *Gunn v. Mathis,* 157 F.Supp. 169, 178 n. 4 (W.D.Ark.1958), *affirmed in part,* 359 F.2d 359 (8th Cir. 1957).

In consideration of the foregoing, the court holds that plaintiff must prevail and that the defendant must return to plaintiff all monies seized under the levies heretofore discussed. An appropriate judgment will be submitted by counsel within seven (7) days from the date of the filing of this Memorandum.

*United States,* 264 F.2d 227 (6th Cir. 1969); *DeWelles v. United States,* 378 F.2d 37 (9th Cir. 1967); *Luhring v. Glotzbach,* 304 F.2d 556 (4th Cir. 1962), do not involve the notice and demand requirement, but, rather, concern the deficiency notice requirement, which is permitted to be mailed to the taxpayer's last known address, 26 U.S.C. § 6212(a), (b). Similarly, the Government's reliance on *Grayson v. United States,* 168 F.Supp. 953 (Ct.Cl.1958) is without merit because notice was actually delivered to the taxpayer-wife prior to levy, even though her husband had absconded.

Finally, the Government's argument that the procedures employed by the I.R.S. fulfilled the notice and demand requirements of 26 U.S.C. § 6303(a) is irrelevant to this action. Section 6303(a) reads as follows:

"(a) General rule.—Where it is not otherwise provided by this title, the Secretary or his delegate shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof. Such notice shall be left at the dwelling or usual place of business of such person, or shall be sent by mail to such person's last known address."

Although it does provide that notice as required therein may be mailed to the last known address (as was the notice of termination) or left at the usual place of business (as was the Prompt Assessment Billing Assembly), it says that such notice is to be given after an assessment made pursuant to the general assessment provision in § 6203. As noted above, the *Laing* Court implied that an assessment for a jeopardy termination was to be made under § 6861, not § 6203. Moreover, § 6303 begins with the phrase: "[W]here it is not otherwise provided by this title . . .." All the sections which the court has discussed previously, § 6851(a), § 6861, and § 6331, provide for notice and demand.