### MACEY & SIKES

v.

### UNITED STATES of America.

### Civ. No. C85–3420.

United States District Court, N.D. Georgia, Atlanta Division.

Dec. 20, 1985.

John M. Sikes, Jr., Macey & Sikes, Atlanta, Ga., pro se.

Richard F. Mitchell, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., Amy D. Levin, Asst. U.S. Atty., Atlanta, Ga., for defendant.

## ORDER

ORINDA D. EVANS, District Judge.

This action to quash a notice of levy issued by the Internal Revenue Service is before the court on Plaintiff's motion for leave to amend their complaint, Defendant's motion for partial summary judgment, and Plaintiff's cross motion for summary judgment.

*Motion to Amend the Complaint*

Plaintiff has moved to amend its complaint in order to add allegations in paragraph 6 that the filing of Defendant's lien against the property of taxpayers John E. and Cheryl S. Hayes was without "notice and demand" on them. The amendment would also add allegations of events that occurred subsequent to the filing of the complaint, but prior to Defendant's filing of its answer. It appears to the court that Plaintiff's amendment is filed in good faith, with no dilatory motive or undue delay, and would not unduly prejudice Defendant. *See Bamm, Inc. v. GAF Corp.,* 651 F.2d 389 (5th Cir. Unit B, 1981). Plaintiff's motion to amend is thus granted.

*Motions for Summary judgment*

The following undisputed facts are before the court. On May 16, 1985, Plaintiff, a law firm, took possession of 15 items of artwork as collateral security for legal services[1] to be rendered to John E. and Cheryl S. Hayes. On the same date, Plaintiff and Mr. and Mrs. Hayes signed a security agreement with respect to these 15 pieces of artwork.

On June 3, 1985, the Internal Revenue Service made an assessment for unpaid 1979 and 1980 federal income taxes against Mr. and Mrs. Hayes, in the amount of $3,947,792.26.

On June 4, 1985, at approximately 1:20 p.m., IRS agents went to the Hayeses' residence in Fulton County, Georgia, to serve formal demand for payment of the allegedly unpaid taxes and a notice of jeopardy

---

1. It is not clear from the record exactly what the parties anticipated these legal services would consist of.

assessment.[2] The security gates of the premises were locked, and efforts to reach the Hayeses through an intercom system were unsuccessful. The agents placed the demand for payment and notice of jeopardy assessment in a sealed envelope taped to the mailbox. An hour or so later, IRS filed a notice of federal tax lien with respect to the assessment in the Superior Court of Fulton County. This was the correct place to file the lien notice.

At approximately 2:30–3:00 p.m.[3] that same day, the Hayeses returned home and opened the envelope from IRS. Mr. Hayes contacted the Plaintiff law firm at 3:00 p.m. concerning this development.

On June 7 and 11, 1985, Plaintiff received possession of 75 additional items of artwork from Mr. and Mrs. Hayes, for the same security uses and purposes (hereinafter referred to as the "Exhibit C artwork"). On June 19, 1985, Plaintiff filed and recorded a "UCC–1 Financing Statement," covering all 90 artworks, in the office of the Clerk of the Superior Court of Fulton County, Georgia.

On June 26, 1985, the IRS delivered a notice of levy to Plaintiff, in an attempt to seize the 90 works of art belonging to Mr. and Mrs. Hayes which were in Plaintiff's possession. On July 2, 1985, Plaintiff filed this action, challenging Defendant's right to levy. On August 22, 1985, IRS filed a second notice of federal tax lien in the Superior Court of Fulton County.

Defendant's motion for partial summary judgment pertains solely to the Exhibit C artworks, i.e., the artworks turned over to Plaintiff on June 7 and 11, 1985. Defendant contends that it has a valid and enforceable statutory lien on this art which has priority over Plaintiff's lien. Plaintiff argues that Defendant's June 4, 1985 tax lien was invalid because it was not *preced-*

ed by the Hayeses' receipt of IRS's demand for payment. Instead, the lien was filed (so far as the instant record reflects) contemporaneously with the Hayeses' receipt of the written notice which had been taped to their mailbox.[4] Because the Hayeses had no opportunity to pay the taxes before the lien was filed, Plaintiff argues that the June 4 tax lien was invalid and that Defendant did not obtain a valid lien against the Hayeses' property until August 22, 1985, when it filed a second lien claim with the Clerk of the Superior Court of Fulton County, Georgia.

The court agrees with the general thrust of Plaintiff's argument that in order for a federal tax lien to be enforceable in the face of a third party claim, it must be valid as against the taxpayers themselves. Further, it is clear that in order for a federal tax lien to be enforceable as against a taxpayer, IRS must make a demand for payment. *Myrick v. United States,* 296 F.2d 312, 314 (5th Cir.1961) (no tax lien will arise until there is a demand for payment); *Phillips & Jacobs, Inc. v. Color-Art, Inc.,* 553 F.Supp. 14 (N.D.Ga. 1982) (tax lien arises upon assessment and demand); *Goldstein v. Barkers Commercial Corp.,* 152 F.Supp. 856 (S.D.N.Y.1957). The court finds no authority, however, supporting Plaintiff's argument that if IRS's demand for payment coincides with or post dates the filing of the lien notice, that the tax lien is void. Instead, the correct rule is that the validity of the federal tax lien, insofar as validity depends on the adequacy of the taxpayer's opportunity to pay, is to be judged as of the date when enforcement of the tax lien is sought. In this case, that date is June 26, 1985, when IRS served the notice of levy on Plaintiff.

---

**2.** The notice of jeopardy assessment essentially advised the Hayeses that IRS was making an emergency tax assessment against them, with no prior notice, because IRS had determined that the Hayeses were liquidating their property in order to place it beyond the reach of the government.

**3.** It is not clear whether the filing of the tax lien came first, or the Hayeses' receipt of the demand notice. In any event, only a few minutes separated the two events.

**4.** The record does not disclose whether the Hayeses had reason to know of an impending tax assessment.

None of the relevant statutes expressly support Plaintiff's position. 26 U.S.C. § 6321 provides in pertinent part:

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property ... belonging to such person.

26 U.S.C. § 6322 provides in pertinent part:

Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed ... is satisfied or becomes unenforceable by reason of lapse of time.

26 U.S.C. § 6323 then provides that the lien imposed by § 6321 is not valid as against certain third parties until a notice of tax lien has been properly filed.

The only case cited by Plaintiff which provides any possible support for its position is *L.O.C. Industries v. United States*, 423 F.Supp. 265 (M.D.Tenn.1976), and cases cited therein. In that case, the taxpayer sought an injunction against the government, which had levied on the taxpayer's bank account. The government had levied and obtained the bank account proceeds before the taxpayer had received any demand for payment from IRS. The court held that the taxpayer was entitled to an opportunity to pay the tax prior to any levy, and that in the absence of such opportunity, there had been no "neglect or refusal to pay after demand" as required by § 6321. It required that the money seized from the taxpayer's bank account be returned pursuant to an injunctive order.

 The court finds that *L.O.C. Industries* is not factually similar to the instant case. In *L.O.C.*, the problem was the timing of the levy in relation to notice of assessment to the taxpayer, not the timing of the assessment notice versus the timing of filing of the tax lien notice. It is clear that the court in *L.O.C.* was concerned about the possible damage to the taxpayer

which might result from an improper levy, when the taxpayer had had no chance to dispute the government's claim. In essence, the government had taken the taxpayer's bank account without giving it notice and an opportunity to be heard. In the instant case, the contemporaneous service of the demand for payment and the filing of the notice of tax lien portended no such drastic possibilities. IRS was merely freezing the status quo, so that the Hayeses could not transfer property in avoidance of IRS's position. The Hayeses had an abundant opportunity to pay IRS or challenge its claim before the June 26 levy. Moreover, the Hayeses had an adequate opportunity to pay even before the Plaintiff obtained its lien position. For example, on June 5 and 6, 1985, IRS's position was clearly valid as against the Hayeses and was perfected as against third parties.[5] Accordingly, Plaintiff's lien in the Exhibit C artwork is inferior to Defendant's lien.

Accordingly, Plaintiff's motion to amend is GRANTED; Defendant's motion for partial summary judgment is GRANTED; Plaintiff's motion for summary judgment is DENIED.

---

5. The parties' briefs hint that Plaintiff's possession of the Exhibit C artworks on June 7 and 11 might be significant to the perfection of Plaintiff's security interest, but the briefs do not directly address this matter. The court need not address this issue in light of its other findings.