UNITED STATES of America

v.

**Edward Lyford CLARK.**

**Misc. No. 267.**

United States District Court,
D. Vermont.

April 18, 1979.

Karen McAndrew, Asst. U. S. Atty., Burlington, Vt., for the United States.

Evan T. Lawson, Boston, Mass., John P. Ambrose, Burlington, Vt., for Edward Lyford Clark.

## OPINION AND ORDER

COFFRIN, District Judge.

This is a proceeding pursuant to 18 U.S.C. § 3184 to certify the extradition of Edward Lyford Clark to Canada under the provisions of the Treaty on Extradition Between the United States and Canada (the Treaty). 27 United States Treaties 983. Respondent Clark is a citizen of the United States who was arrested in Canada on February 27, 1978 and charged with importing Cannabis resin oil into Canada and with possession of Cannabis resin oil for the purpose of trafficking. At the time, he was on parole from a sentence to Vermont's Community Correctional Center, St. Johnsbury, Vermont. Mr. Clark entered a guilty plea to the charge of possession for the purpose of trafficking, and was released on bail. He returned to the United States, was found to be in violation of his parole and was incarcerated at the Community Correctional Center. On June 22, 1978, Clark was sentenced in absentia to nine months in jail by the Canadian authorities. On September 13, 1978 Mr. Clark was again released on parole from his Vermont sentence, and was subsequently brought before this court for extradition proceedings. Upon consideration of the memoranda and official docu-

mentation filed with the court and the arguments of counsel, we find that the requisites for extradition have been satisfied and certify to the Secretary of State that a warrant may issue for the surrender of the respondent according to the stipulations of the Treaty. At the outset the court notes that its role in this proceeding is a narrow one:

> The hearing is merely to ascertain whether a treaty applies and whether the evidence of criminal conduct is sufficient to justify his extradition and trial by [the requesting] country. Since the executive branch is charged with the conduct of our foreign relations, the role of the judge or magistrate is only to ensure that this minimal showing has been made.

*Sabatier v. Dabrowski*, 586 F.2d 866, 869 (1st Cir. 1978) (citations omitted). *Accord, Fernandez v. Phillips*, 268 U.S. 311, 45 S.Ct. 541, 69 L.Ed. 970 (1925); *Shapiro v. Secretary of State*, 162 U.S.App.D.C. 391, 499 F.2d 527 (1974), *aff'd on other grounds*, 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976).

The respondent concedes, and the court finds, that he is the same Edward Lyford Clark who was arrested and convicted in Canada and named in that country's extradition request. The court finds that the certified copy of respondent's Certificate of Conviction in Canada, submitted to the court, is sufficient proof that probable cause exists that the respondent has been guilty of an offense involving criminality and we hold that document satisfies the requirement that the court find sufficient "evidence of criminality" as set forth in 18 U.S.C. § 3184. *In re Edmondson*, 352 F.Supp. 22, 24 (D.Minn.1972). We note also that the respondent acknowledges that he pled guilty to and was sentenced for a criminal offense. The certification submitted to the court satisfies the requirements of Article 9, § 4 of the Treaty. The affidavit of Alexander Isaac, Head of the Prosecution Section of the Toronto Regional Office of the Department of Justice of Canada, which states that respondent has not served his Canadian sentence, is a sufficient "statement" of that fact under Article 9,

§ 4 of the Treaty, and respondent's arguments to the contrary are unavailing. The Counsul General has certified that the documents received in evidence are properly and legally authenticated so as to entitle them to be admissible for similar purposes by the tribunals of Canada, and therefore they are admissible before this court. *In re Edmondson*, 352 F.Supp. 22, 24 (D.Minn.1972); Treaty, Article 10, § 2. We cannot find this affidavit inadequate, particularly where, as here, the truth of the statement is not contested by the respondent.

The court finds further that the offense in question falls within the scope of the Treaty, being listed on the Schedule of extraditable offenses, and being punishable in both the United States and Canada by a term of imprisonment exceeding one year. Treaty Schedule of Offenses, Item 26; Narcotic Control Act of Canada, § 4(c); 21 U.S.C. § 841. Respondent's argument that his offense is not comprehended by the Treaty because he was *sentenced* to a term of less than a year is without merit. Article 2, § 1 of the Treaty explicitly refers to offenses "punishable . . . by a term of imprisonment exceeding one year," and the offense is punishable by terms far longer than that in both countries. Leniency in sentencing does not raise a bar to extradition.

Respondent's additional objections are equally without merit. He raises a procedural objection to the present proceedings pursuant to Article 11, § 3 of the Treaty, which states:

> A person arrested shall be set at liberty upon the expiration of forty-five days from the date of his arrest pursuant to such application if a request for his extradition accompanied by the documents specified in Article 9 shall not have been received. This stipulation shall not prevent the institution of proceedings with a view to extraditing the person sought if the request is subsequently received.

Respondent was arrested on the warrant of extradition on September 13, 1978, and has been free on bail since September 15, 1978.

The formal extradition documents were received by the Department of Justice on October 24, 1978 and were forwarded to the Department of State for signature on October 26, 1978. They were filed with the court on November 9, 1978.

These documents were "received" by the United States within the forty-five day period even though their filing with the court occurred fifty-seven days after Mr. Clark's provisional arrest. The Treaty does not state to whom documents must be delivered in order to constitute receipt for the purposes of Article 11, § 3. We are satisfied, however, that the Treaty does not require receipt at the courts of the asylum country. If this were the case, the interests of the demanding country under the Treaty could consistently be undercut by bureaucratic sluggishness within the asylum country's executive agencies. The Treaty requires demands for extradition to be made through "the diplomatic channel" only, not directly to the courts of the asylum country. Treaty, Article 9, § 1. We infer from this requirement and from the language quoted above that the purpose of the forty-five day provision is to protect the asylum country and respondents in its custody from custodial burdens and deprivations due to foot-dragging on the part of the demanding country. *See In re Chan Kam-Shu*, 477 F.2d 333, 339 (5th Cir. 1973). Whether subsequent delay within the government of the asylum country violates the rights of potential extraditees would at most be a question only of the asylum country's national law,[1] and is not a sufficient basis, standing alone, on which to deny an extradition demand under the Treaty.[2]

Respondent has also presented a constitutional objection to extradition based upon a plea bargain he claims to have entered into with Canadian authorities, which he argues must be honored by the American government and this court, under the reasoning of *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). We cannot agree with this line of argument. To begin with, respondent's assertions are extremely vague and without any specificity. His attorney's memorandum merely claims:

> After plea negotiations in Canada, Clark was advised that he could plead guilty to the charge of possession for the purpose of trafficking, be released on bail, and if he were incarcerated in Vermont at the time of his sentencing in Canada he would be given a sentence concurrent with his Vermont sentence. Accordingly, he plead [*sic*] guilty on March 14, 1978, was released on bail and returned to Vermont, surrendering himself to the parole violation shortly thereafter.

Respondent's Memorandum of December 18, 1978 at 2. The thrust of his argument is that the alleged agreement was violated by Canadian authorities when he was not given a concurrent sentence on the Canadian plea. Admitting that these assertions are without specificity or factual support, respondent urges this court to hold an evidentiary hearing to determine whether such an agreement did in fact exist, and if so, whether it was breached.

This suggestion itself highlights the frailty of respondent's legal claim. Even if we were inclined to do so, this court could not hold such an evidentiary hearing. This court does not have jurisdiction to determine whether the respondent had a valid plea agreement with the Canadian authorities, and if so, to determine whether Canadian law requires that it be honored. We do not dispute respondent's assertion that the U.S. Supreme Court "has regularly

1. The parties have not raised this question, perhaps because the result seems obvious. Under the circumstances of this case, we do not believe that Mr. Clark has suffered any legal wrong due to the Government's additional twelve-day delay in presenting extradition documents to this court. Mr. Clark has been released on bail since September 15, 1978, two days after his provisional arrest. Since extradition proceedings are not criminal prosecutions, no sixth amendment right to a speedy adjudication is involved. *Sabatier v. Dabrowski*, 586 F.2d 866, 869 (1st Cir. 1978).

2. The requesting country may be able to demand reasonably prompt action by the asylum country's government under Article 17 of the Treaty; this issue is not before the court.

and uniformly recognized the supremacy of the Constitution over a treaty." *Reid v. Covert*, 354 U.S. 1, 17, 77 S.Ct. 1222, 1231, 1 L.Ed.2d 1148 (1957). The Constitution does not control the government of Canada, however, and it does not demand adherence to all of its nuances by foreign governments even when they bring criminal prosecutions against American citizens. "It is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation. Such an assumption would directly conflict with the principle of comity upon which extradition is based". *Jhirad v. Ferrandina*, 536 F.2d 478, 484–85 (2d Cir. 1976), *citing Factor v. Laubenheimer*, 290 U.S. 276, 54 S.Ct. 191, 78 L.Ed. 315 (1933). *See also Stowe v. Devoy*, 588 F.2d 336, 341 (2d Cir. 1978); *United States v. Morrow*, 537 F.2d 120, 139 (5th Cir. 1976); *In re Edmondson*, 352 F.Supp. 22, 24 (D.Minn.1972). Respondent's reliance upon *Geisser v. United States*, 554 F.2d 698 (5th Cir. 1977), is misplaced. That case involved a plea agreement with the United States, not with a foreign government. Mr. Clark's claim of a breached plea agreement must be taken up with the Canadian courts.

Based upon the proceedings held on December 4, 1978; the documentary evidence accompanying the requisition for the extradition of Edward L. Clark dated October 13, 1978; the affidavit of Thomas J. Ramsey, Attorney Adviser, Office of the Legal Adviser, Department of State, United States of America, dated November 2, 1978; the Memoranda filed by counsel for the respondent and the government; and for the reasons expressed in this opinion, the court finds the evidence sufficient to sustain the charge set forth in the complaint against the respondent, Edward L. Clark, and to satisfy the requirements of 18 U.S.C. § 3184 and the Treaty on Extradition Between the United States and Canada. Accordingly, the court certifies to the Secretary of State that a warrant may issue for the surrender of the respondent, Edward L. Clark, according to the stipulations of the Treaty.